Arturo Castro Lund and his wife Aida Franceschi Antongiorgi, Plaintiffs and Appellees, *v.* Félix González Rivera and U. S. Fidelity & Guaranty Co., Defendants and Appellants.

No. 8178. Argued February 12, 1941.—Decided March 28, 1941.

372

*Rosa Luz Silva, Federico Tilén, Leopoldo Tormes García* and *J. Alemañy Sosa* for appellants. *Agustín E. Font,* for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

This suit was filed under the provisions of Section 60 of the Code of Civil Procedure and Sections 1802 and 1803 of the Civil Code (1930 ed.), to recover damages which the plaintiffs allege to have suffered as the result of the death of their legitimate daughter, Vilma Castro Franceschi, aged eight, which took place in Ponce on the 4th of June, 1938, when she was struck down by the bus No. P.–914, which belongs to the transportation concern whose owner is the defendant, Félix González Rivera, and which was insured by his codefendant, the United States Fidelity and Guaranty Co.

The original complaint was filed in the name of Arturo Castro, the girl's father, and set forth two causes of action: one, against the owner of the concern, and the other, against the insurer. The first cause of action, which tended to establish the liability of the defendant, F. González Rivera as the owner of the concern, alleged that the negligence of Carlos Vázquez, the driver of the bus, had been the cause of the accident, specifying the acts which constituted said negligence, and ended alleging that the death of his daughter had caused him extraordinary mental and moral suffering and expenses which he estimated in the sum of $25,000. The second cause of action copied the allegations of the first, referred to the insurance contract existing between the codefendants and

ended with a prayer that judgment be rendered against the company in the amount already stated, in case that the judgment rendered against its codefendant could not be executed.

After defendants' motion to strike certain allegations and requesting a bill of particulars had been granted in part, plaintiffs were given ten days in which to file an amended complaint and the bill of particulars requested.

The complaint was amended, but when this was done, the mother of the girls, Aida Franceschi Antongiorgi, was made a party plaintiff; one sole cause of action was set out against the defendants, and as in the original complaint, judgment to the amount of $25,000 was prayed for, this sum consisting of the following items: funeral expenses, $350; the cost of a tomb built in the Catholic Cemetery of Ponce and dedicated to the memory of the girl, $2,000; medical treatment for the co-plaintiff, caused by the ill effects which the tragic death of her daughter had upon her health, $250; mental suffering of the co-plaintiff, $11,200; and an equal amount for that of his wife.

The defendants moved to strike out the whole amended complaint, and separately, and only in case the first motion should not prosper, requested in a second motion that certain allegations of said complaint be stricken out and that they be furnished with a bill of those particulars which were necessary according to them, in order to prepare their answer.

Both motions were denied and after taking the corresponding exception in the record, the defendants answered. They admitted the occurrence of the accident, but denied that the fault or negligence of the driver of the vehicle was its proximate cause, alleging on the contrary that it was caused by the contributory negligence of the girl when she crossed the street in the manner in which she did, and by that of her parents who permitted her, in spite of her tender age and the late hour of the night, to walk alone along the

streets of the City of Ponce. Denying always that the driver had been negligent, the defendant González Rivera alleged that he exercised the diligence and care of an ordinarily prudent man when he employed said driver, and he set forth details of an investigation which he carried out before employing him, and his subsequent observations, alleging furthermore that he has always maintained all the buses of his concern in a perfect state of conservation and properly equipped, so that they may be driven without any risk or danger caused by any defect or lack of fitness of said vehicles.

The defendant insurer alleged in its turn that the terms of the policy limited its liability in cases of death through the fault or negligence of the insured to a sum not to exceed $3,000.

After the evidence had filed before the court, which proceeding took several days, judgment was rendered in the following terms: the defendant, Félix González Rivera was condemned to pay to the plaintiffs the amount of $12,000 as an indemnity, in a proportion of $6,000 for each of the plaintiffs spouses; the defendant U. S. Fidelity and Guaranty Co., taking into consideration the terms of the policy, was condemned to pay the amount of $3,000 ''as part of said sum of $12,000'', and the defendants were condemned furthermore to pay jointly and severally the costs of the proceedings and the amount of $500 for attorney's fees.

The defendants appealed and in their brief they assign twenty-four errors, many of which have to do with the pleadings and others with the weighing of the evidence. In order to facilitate their discussion, as well as to give emphasis to the issues in controversy, we have set forth briefly the proceedings which took place before the trial, and with that same object in mind we now proceed to the study of the evidence.

The evidence is contradictory with respect to those essential details which may determine the liability of the defend-

ants. The evidence for the plaintiffs tends to prove that about 10:30 in the evening, the deceased, her father, and a nephew of his, came out of the movies and walked in the direction of Mr. Castro's residence. That the girl wanted her father to buy her candy and when he refused, she became angry and refused to walk hand in hand with him, remaining behind them. That the girl was walking on the sidewalk of Salud Street, in front of the Liceo and that when she reached a hydrant which is located there, she ran accross the street, and was struck down by the bus, three or four feet from the opposite sidewalk. Up to this point there is no conflict at all in the evidence. Plaintiffs and defendants differ in that the evidence for the former asserts that the bus, when the accident occurred, was being driven at an excessive rate of speed, and its driver did not blow his horn or take the due care and precaution, since at that very moment of the accident he was engaged in a conversation with the passengers, which made him turn his face towards the right in order to be able to hear them and that this was the reason why he did not notice the presence of the girl until she had been struck down by the vehicle.

The evidence for the defendants tends to deny any negligence on the part of the chauffeur. Some of their witnesses maintain that the girl was running on the above mentioned sidewalk and suddenly, when she reached the hydrant, she started to run accross the street with her head down, until she came face to face with the bus, so that it was impossible to avoid the accident in spite of all the steps taken by the driver. The latter affirms that he saw a rapidly moving shadow which was nearing the bus on its left side, and that although he immediately applied the emergency and foot brakes, he could not stop the vehicle until after he had struck down what later turned out to be the plaintiffs' daughter. The driver and some of the defendants' witnesses state that the bus was traveling at a speed of about ten kilometers per

hour and that when it neared the corner of Cristina Street, it reduced its speed to eight kilometers and blew its horn loudly; that it is not true that he was talking with the passengers, and that he was looking forward.

Besides the eye witnesses, the Chief of Police, Rafael Molina, testified that the same night of the accident, he went to the place where it happened together with the District Attorney, Mr. Rodríguez Serra, and Corporal Rafael Torres and there they observed certain things, among them the fact that there were some blood stains on the pavement, the last of which was about six or eight feet from the first, and that between the first blood stain and the place where the bus finally stopped—which they were able to determine through the prints left on the pavement—there was a distance of twenty-seven and a half feet. An ocular inspection was also practiced and the court, through it, was enabled to see the places and measure the distances to which the witnesses had referred in the course of their testimony.

In their brief, appellants assign twenty-four errors, many of which are repeated. If we were to consider each of them separately, we would incur in useless repetition and prolong this opinion unnecessarily. Therefore, we shall try to include in the general discussion all the questions raised by the appellants.

▮ As we have seen while summarizing the pleadings, Mr. Castro, father of the deceased minor, appeared in the original complaint of this case as the sole plaintiff. When the defendants' motion to strike and the motion requesting a bill of particulars were granted, the court allowed the plaintiff a period of ten days to amend his complaint. The amended complaint did not change the total of the amount claimed for damages, but included the mother of the deceased as a party plaintiff. The appellants maintain that this amended complaint could not be filed without previous permission of the court. They seem to forget that the plain-

tiff had been granted a period of ten days to file an amended complaint and that, although as a matter of fact a party was joined who did not appear as plaintiff in the original complaint, as a question of law the legal situation remained unaltered, since Section 60 of the Code of Civil Procedure expressly authorizes the father and the mother jointly and severally to bring actions of this kind and provides furthermore that the natural or legitimate mother shall always be a party to the action, in a share equal to that of the legitimate or acknowledged natural father. Therefore, the lower court did not err in refusing to strike out the amended complaint.

██ In said amended complaint the precise place where the accident occurred is not set forth, and two items of damages, among others, are claimed: one of $2,000, the cost of the tomb to which we have referred and another of $250, spent in medical assistance for Mrs. Franceschi. We do not doubt that the place where the accident took place should have been set forth, especially when the defendants requested it, but it can be easily seen, as a result of the pleadings and the evidence offered by them, that no harm was caused to them when the court refused to grant the bill of particulars requested. The same can be said with respect to the refusal to strike out the above mentioned item of $2,000, since the trial court, in its final decision of the case, discarded this item because it could not be the object of recovery. This being so, Section 142 of the Code of Civil Procedure must be applied, which provides that in any stage of a suit the court must not consider or give weight to any error which does not affect the substantial rights of the parties and that no judgment will be reversed or annulled because of such error or defect.

Assuming that the item of $250 for doctor's fees incurred because of the illness of the minor's mother, caused by the death of her child, could not be an object of recovery, the error, if any existed, in permitting that the said item remain

in the amended complaint, does not cause the reversal of the judgment, since other items of damages are claimed, and the problem would be solved by not considering said item while fixing the amount of damages which finally should be granted to the plaintiffs.

■■■■■ Appellants complain of and assign as an error of the trial court, the fact that the investigation carried out by the district attorney in the prosecution instituted against the driver, Vázquez, was used in this case to impeach the defendants' witnesses, alleging that the investigations carried out by the district attorneys are of a private character and that, in any event, said depositions do not appear signed by the witnesses nor is it clear from the testimony of the district attorney's stenographer that they were read to the witnesses.

It is true that the investigation carried out by the district attorney is of a private character and that generally he cannot be compelled to show it, but this a privilege of the district attorney which he may waive; and if, as in this case, he voluntarily places the record of the investigation at the disposal of the parties, depositing it with the clerk of the court in order that it may be used in the trial, there is no legal reason which prevents its use by any of the parties. The validity of said written testimony does not depend on whether the district attorney's stenographer reads it or not to the witness as soon as he finishes testifying nor is it necessary to transcribe the stenographic notes immediately, in order that the witness may sign his written testimony, since the district attorney's stenographer is a public employee and the law assumes that the duties of an office have been duly discharged. (Section 102 of the Law of Evidence, equivalent to Section 464 of the Code of Civil Procedure, 1933 ed.). Therefore, the lower court did not err when it permitted the use of said depositions to impeach the testimony of Genaro Toro Rodríguez, since this witness testified at the trial with an abundance of details concerning the man-

ner in which the accident occurred, while in the investigation carried out by the district attorney on the night of the accident the same witness stated: "I was very nervous and I could not see anything. The bus had passed Cristina Street, when the girl came out running; that was all I could see."

The witness for the defendants, Joaquín Maldonado, testified at the trial that the driver blew his horn, and in the investigation carried out by the district attorney, when asked: "Did he blow his horn when he reached the corner?" he answered: "I did not hear it." As the grounds had been laid for the impeachment of this witness, the lower court did not err in admitting in evidence the testimony given before the district attorney.

To avoid that this opinion be given a scope which it does not have, we wish to state that when we say that the depositions taken by the district attorney may be offered in evidence, it should be understood that they may be so offered solely and exclusively to show that the witness on another occasion had made statements inconsistent with those made by him at the trial; but that such depositions are not admissible for the purpose of proving at the trial what the witness stated through them, among other reasons because the party against whom said deposition was directed would be deprived of his right to cross-examine the witness.

 José Manuel Laboy, also a witness for the defendants, described the accident in detail and while testifying, when cross-examined by the plaintiffs' attorney, stated that he had not worked that day in the Central Merceditas where he usually works during the harvesting and grinding season, having to do specifically with the sugar evaporators, because on that date the grinding season had already ended and there was no work in the Central. The court then admitted, for the purpose of impeaching Laboy's testimony, that of the witness Pedro Jerónimo Goyco, timekeeper of the factory of the Central Merceditas, who testified that the factory had

been in operation that year until June 12 and that it appeared from the payroll which he had in his hands that José Manuel Laboy worked on the 4th of June, 1938.

In our opinion, the court did not err in admitting the testimony of Goyco, since it at least tended to show the weakness of Laboy's memory and up to a certain point cast doubts on a testimony in which the witness related the details of the accident with such great precision, since it seems strange that he could remember those details with such exactness and yet not remember something which concerned him personally, that is, the fact that he had worked on the day in question.

■ While the witness Federico Tarrats was testifying for the plaintiffs, he stated that when the driver felt the blow which the girl had suffered, he turned towards the passengers and said to them: "Have you noticed how that little girl threw herself underneath the bus?" When asked by the attorney for the plaintiffs if he had said something more, the witness replied: "That is all I remember." He was asked again: "Did he say whether he had seen the girl?" The attorney for the defendants objected, and the court sustained his objection, the attorney for the plaintiffs then requesting the witness to state everything that the chauffeur had said, and the witness answering: "When he turned, he said: 'Have you noticed how that little girl threw herself underneath the bus?' If he said something more, I can not remember it now."

The attorney for the plaintiffs then showed the witness the declaration which he had given before the district attorney, from which it appeared that in answer to a similar question he had said: "Have you noticed how that little girl threw herself underneath the bus? *I haven't seen her,* she threw herself underneath the bus", and the witness accepted it as correct.

It is true that the Law of Evidence provides that the memory of a witness can only be quickened through the offering of a memorandum written by him on a date so near to the happening of the events that these are still fresh in his memory, and in the present case the testimony given before the district attorney cannot be considered the memorandum to which the Law of Evidence refers. But taking into consideration the circumstances of the instant case, as it does not appear clearly that this error has harmed the substantial rights of the defendants, we are of the opinion that it does not call for the reversal of the judgment. Section 142 of the Code of Civil Procedure.

■ The appellants also assign as error the fact that the court permitted the witness of the plaintiffs, Flor Echevarría, to answer in his direct examination that he had come to testify because he had received a letter to that effect from the attorney for the plaintiff, Mr. Font. The question, as well as the answer, were clearly immaterial and the error of the court in admitting them, therefore, cannot affect in the least the substantial rights of the defendants.

■ Neither is it of any importance that the driver was asked, while testifying, whether he found himself under indictment for an offense of involuntary manslaughter, if one takes into consideration that we are not dealing with a trial by jury, but instead with a trial before a judge of long experience who would not be influenced in the slightest by the existence of such an indictment.

■ The appellants allege that the court erred in admitting evidence concerning the economic situation and income of the party plaintiff. The reason that justifies this evidence is to be found once we consider that one of the items claimed is the amount of $350 spent by the plaintiffs in their daughter's funeral. In order to determine whether this expense was reasonable, we must have in mind the social and economic position of the parents of the girl, since what could be

a reasonable expense in a person of the economic means of the plaintiffs, could be considered exaggerated in a person of more limited economic means.

The expert for the defendants, Mr. Mayoral, testified that a bus similar to that of the defendants which was travelling at the speed calculated by their witnesses, that is, at about eight kilometers per hour, and which was carrying from 15 to 20 passengers, could stop at eight or ten feet more or less from the place where the brakes were applied, and the trial judge said in his opinion:

"In any event, it has been proven that from the place where the first blood stain appeared to the place where the bus stopped, there is a distance *three times greater* than the eight feet which the expert for the defendants, Carmelo Mayoral, indicated in his testimony."

We cannot agree with the appellants in that the lower court erred "in the weighing and appraisal" of the above mentioned testimony given by the expert.

It is true that the defendant González offered evidence undisputed by plaintiffs which tended to uphold his defense that he exercised all the care of an ordinarily prudent man in selecting the driver Vázquez and in maintaining the buses in good condition. We admit that the last paragraph of Section 1803 of the Civil Code (1930 ed.) provides that the liability which said article deals with "shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage"; but as this Court said in the case of *Maldonado* v. *Porto Rico Drug Co.*, 31 P.R.R. 709, if we were to construe this provision as the appellants suggest, it would be very easy to evade liability for any claim established under the protection of said Section. It is not enough to prove that efficient and careful employees were chosen. It must also be proved that the care and diligence necessary to avoid the injury were exercised. See also *Rodríguez* v. *National Cash Reg. Co.*, 35 P.R.R. 606, and the authorities cited there-

in, among them *Panama Railroad Co.* v. *Toppin,* 252 U. S. 308. But in the instant case the lower court reached the conclusion that the negligence of the driver of the bus was the only proximate cause of the accident. This being so, the judgment appealed from does not violate the provisions of the above mentioned Section 1803.

In our opinion, the trial court did not err in its weighing of the evidence. As we have previously said, the evidence is contradictory and although the case is on the border line and could have been decided in one way or another—according to the evidence believed by the court—the trial judge, who had the opportunity of seeing and hearing the witnesses testify, as well as of practicing the ocular inspection to which we have referred, reached the conclusion that he should settle the conflict of the evidence in favor of the plaintiffs, and as he was in a better position than we are to appraise the evidence and as it has not been shown that he acted moved by bias, prejudice or partiality, we cannot disturb the finding which he made to the effect that the negligence of the driver Carlos Vázquez, was the proximate cause of the accident.

Defendants appellants also brought forward the defense of contributory negligence on the part of the girl and her parents. It is a well established rule that a child, at least while it has not reached the more advanced stage of infancy, is not bound to exercise the same degree of care required of an adult and that the criterion by which to judge its conduct with respect to the defense of contributory negligence consists in determining whether it exercised the care and circumspection which other children of the same age, capacity, discretion, knowledge and experience would have exercised in the same circumstances. 107 A.L.R. 7. "If the care required of a child is to be measured by such considerations as its capacity, discretion, knowledge, and appreciation of the probability and extent of the danger, there is, of course,

an. age at which no care can be required of a child; in other words, an age at which the doctrine of contributory negligence has no application. And in many cases in actions for injuries to children of ages ranging from a few months to seven years, the courts have held that, as matter of law, the child was not chargeable with personal contributory negligence, not apparently because negligence could not be inferred from the particular circumstances, but because the age of the child created a conclusive presumption that it was incapable of personal contributory negligence.'' Work cited, page 71. This conclusive presumption is not applicable in general to children who have reached the age of eight years. Work cited, page 127.

In the case at bar, the girl was only eight years old the day of the accident and assuming that she had seen the bus before starting to cross the street, her error in calculating that she could cross without being struck by the vehicle, could well be excused, since the bus undoubtedly was sufficiently remote from the place where the girl found herself when she started to cross the street, if—as the lower court found—the bus was travelling at an excessive rate of speed. Perhaps an adult person would have been able to determine the time which he would take in crossing the street and that which the bus would take in covering the distance which it had to. travel before reaching him. When we consider the age of the minor, we cannot require her to have that degree of intelligence necessary to calculate correctly time, distance and speed. She was not so mistaken in her calculations after all, since in spite of the excessive speed at which the bus was being driven, the latter could only reach her when the girl was but three or four feet removed from the opposite sidewalk.

Neither can we agree with the appellants in that the parents of the minor were guilty of contributory negligence. The minor was not alone in the streets of Ponce as the ap-

pellants allege. It is true that she was not walking hand in hand with her father, but it appears from the evidence that the latter, although he was walking ahead of her, was watchful of her steps and that moments before, when she crossed another street, he warned her to be careful while crossing. Furthermore, the girl attended a school located precisely where the accident happened and many times she went there alone. So that the father, considering the experience of the girl in going alone to the school and her age, could reasonably trust her capacity to walk alone in that place without having to be led by the hand.

All we have to consider now is the amount granted to plaintiffs as damages, as well as the award of attorney's fees. We know that no amount, however great it may be, is sufficient to compensate fully for the death of a child; but taking into consideration the practice followed in this jurisdiction and the circumstances of this case, we are of the opinion that a judgment for $12,000 exceeds the limits established therein. Considering all the circumstances of this case, we think that the sum of $5,000 is a reasonable amount.

It it is not our custom to intervene with the discretion of the trial judge in the award of attorney's fees unless it appears from the evidence and circumstances of the case that said judge has abused the discretion granted to him by law. In the instant case, the evidence, as we have said, was long and complicated and it took several days for it to file before the court. Considering the amount involved and the damages allowed by the judgment, we are of the opinion that the trial court did not abuse its discretion when it granted to the plaintiffs the amount of $500 for attorney's fees.

For these reasons, the judgment appealed from must be modified in the sense of reducing the amount granted from $12,000 to $5,000, and that which the lower court should have rendered must then be rendered condemning the defendant, Félix González Rivera, to pay to the plaintiffs, in equal

shares, the amount of $5,000 plus costs and $500 for attorney's fees, and his codefendant, The United States Fidelity and Guaranty Co., to pay jointly with said defendant, as part of the total of the above mentioned sum, the amount of $3,000, and thus modified, the judgment appealed from is affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.